METROPOLITAN ELECTRIC, INC. *v.*
JONES.

(No. 85 CVI 17543—Decided
May 8, 1986.)

Cleveland Municipal Court.

*Joel I. Newman,* for plaintiff.
*Jerome Silver,* for defendant.

ADRINE, J. This matter came on for hearing April 9, 1986 on the complaint of the plaintiff and the second amended answer and counterclaim of the defendant. Following the hearing on the merits, the court took the matter under advisement and now issues its separate findings of fact and conclusions of law. Judgment is entered accordingly.

### Findings of Fact

1. The plaintiff is an Ohio corporation engaged in the business of electrical contracting.

2. The defendant was the owner of property located at 1191 East 80 Street in Cleveland, Ohio, consisting of five suites.

3. In 1983, the defendant decided to sell the aforementioned property.

4. In order to do so, the defendant attempted to correct a number of violations on the property for which it had been cited by the city of Cleveland.

5. On September 12, 1983, the defendant entered into a purported contract with the plaintiff to do electrical work at 1191 East 80 Street.

6. The plaintiff was selected because its was the lowest bid.

7. The plaintiff agreed to do the work for $3,000.

8. The next lowest bid was $300 higher.

9. The plaintiff drafted the contract language.

10. The defendant believed that the contract covered all electrical violations then existing at the location.

11. The plaintiff maintained that only those items for which the property was cited were covered.

12. The plaintiff's work at the site met the building code.

13. However, the work was obtrusive, unsightly and cosmetically unacceptable to the defendant.

14. Plaintiff has been paid half of the contract price.

15. A city inspector would not close the permit until the other violations had been corrected.

16. The contract provided that the balance could not be paid until the work had passed a final approved inspection by the city.

17. The plaintiff pressured the city to close the permit.

18. Because the plaintiff refused to correct the remaining electrical problems for the contract price, the defendant hired another contractor who completed the necessary work for the amount which was still owed to the plaintiff under the contract.

19. Subsequently, the city con-

ducted a second final inspection and the work was passed.

## Conclusions of Law

The contract at issue here was drafted by the plaintiff's president. It is inartfully constructed and ambiguous. It was presented to the defendant, who apparently executed it without taking any part in its preparation. The comments made by the Supreme Court of Ohio concerning a contract which was scrutinized in *McKay Machine Co.* v. *Rodman* (1967), 11 Ohio St. 2d 77, 80, 40 O.O.2d 87, 89, 228 N.E. 2d 304, 307, could easily have been made concerning the contract under discussion here:

"At the outset, it must be noted that the precise meaning * * * is not particularly clear. At the very best it means one thing to defendant and another to plaintiff. In such cases, the rule is well established that where there is doubt or ambiguity in the language of a contract it will be construed strictly against the party who prepared it. *Smith, Admr.,* v. *Eliza Jennings Home,* 176 Ohio St. 351. In other words, he who speaks must speak plainly or the other party may explain to his own advantage."

Relying on the above authority, this court is constrained to accept the defendant's interpretation of the contract currently under review. The court therefore concludes that the contract between these parties envisioned the correction of all electrical violations which existed at the subject location at the time the contract was entered.

The plaintiff's refusal to correct all of the then-existing electrical violations for the contract price constituted a material breach of the agreement in a substantial particular. The defendant has elected to rescind the contract rather than seek compensatory damages for the plaintiff's breach.

Generally speaking, a party rescinding a contract for non-performance or default in some particular by the breaching party must restore what he has received or tender restoration of it. A party will not be permitted to retain the benefits of a contract and at the same time repudiate it. 18 Ohio Jurisprudence 3d (1980) 231, Contracts, Section 310. See, also, *Buydden* v. *Mitchell* (App. 1951), 60 Ohio Law Abs. 493, 102 N.E. 2d 21. In the case at bar, there is no evidence that restoration was ever tendered. Additionally, since the defendant has sold the property where the work was performed, restoration is presently an impossibility. It would thus appear that the defendant's demand for rescission should fail.

However, the general rule requiring at least a tender of restoration before rescission is available has an exception which this court feels is applicable to the facts before it. The exception is this: If what a party has received as consideration is of no value, he need not return it. *Taft* v. *Wildman* (1846), 15 Ohio 123.

In the instant matter, photographs were admitted into evidence. These photographs clearly show that the work done by the plaintiff under this contract constituted a horrific abomination. The end result of plaintiff's efforts was to make a residence resemble a garage, a barn or a warehouse, rather than a home. Clearly, the defendant's purpose for making these repairs, to wit: to enhance the property's value, was retarded, not advanced by the plaintiff's work.

The court therefore concludes that the work done by the plaintiff was of no value to the defendant and that restoration was not required in this case to entitle the defendant to a rescission of the contract and restitution of the initial monies paid by him to the plaintiff under its terms.

The court further concludes that the plaintiff did not engage in any conduct for which punitive damages may be awarded.

Judgment Entry

Judgment for the defendant on the complaint.

Judgment for the defendant on the counterclaim. The contract of the parties is ordered rescinded. The plaintiff is ordered to make restitution to the defendant in the sum of $1,500. Plaintiff to pay the costs of this action.

*Judgment accordingly.*